(Slip Opinion)           OCTOBER TERM, 2005                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HOLMES *v.* SOUTH CAROLINA

### CERTIORARI TO THE SUPREME COURT OF SOUTH CAROLINA

No. 04–1327.   Argued February 22, 2006—Decided May 1, 2006

At petitioner's South Carolina trial for murder and related crimes, the
prosecution relied heavily on forensic evidence that strongly sup-
ported petitioner's guilt.  Petitioner sought to undermine the State's
forensic evidence by introducing expert testimony suggesting that the
evidence had been contaminated and that the police had engaged in a
plot to frame him.  Petitioner also sought to introduce evidence that
another man, Jimmy McCaw White, had been in the victim's
neighborhood on the morning of the assault and that White had ei-
ther acknowledged petitioner's innocence or admitted to committing
the crimes himself.  In White's pretrial testimony, he denied making
the incriminating statements and provided an alibi for the time of the
assault.

  The trial court excluded petitioner's third-party guilt evidence cit-
ing the State Supreme Court's *Gregory* decision, which held such evi-
dence admissible if it raises a reasonable inference as to the defen-
dant's own innocence, but inadmissible if it merely casts a bare
suspicion or raises a conjectural inference as to another's guilt.  Af-
firming the trial court, the State Supreme Court cited both *Gregory*
and its later decision in *Gay*, and held that where there is strong fo-
rensic evidence of an appellant's guilt, proffered evidence about a
third party's alleged guilt does not raise a reasonable inference as to
the appellant's own innocence.  Applying this standard, the court
held that petitioner could not overcome the forensic evidence against
him.

*Held:* A criminal defendant's federal constitutional rights are violated
by an evidence rule under which the defendant may not introduce
evidence of third-party guilt if the prosecution has introduced foren-
sic evidence that, if believed, strongly supports a guilty verdict.
"[S]tate and federal rulemakers have broad latitude under the Con-

stitution to establish rules excluding evidence from criminal trials." *United States* v. *Scheffer,* 523 U. S. 303, 308. This latitude, however, has limits. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane* v. *Kentucky,* 476 U. S. 683, 690. This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer, supra,* at 308.

While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. An application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. Such rules are widely accepted and are not challenged here.

In *Gregory,* the South Carolina Supreme Court adopted and applied a rule intended to be of this type. In *Gay* and this case, however, that court radically changed and extended the *Gregory* rule by holding that, where there is strong evidence of a defendant's guilt, especially strong forensic evidence, proffered evidence about a third party's alleged guilt may (or perhaps must) be excluded. Under this rule, the trial judge does not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt. Instead, the critical inquiry concerns the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues. Furthermore, as applied below, the rule seems to call for little, if any, examination of the credibility of the prosecution's witnesses or the reliability of its evidence.

By evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt. Because the rule applied below did not heed this point, the rule is "arbitrary" in the sense that it does not rationally serve the end that the *Gregory* rule and other similar third-party guilt rules were designed to further. Nor has the State identified any other legitimate end served by

Syllabus

the rule. Thus, the rule violates a criminal defendant's right to have " 'a meaningful opportunity to present a complete defense.' " *Crane, supra*, at 690. Pp. 4–11.

361 S. C. 333, 605 S. E. 2d 19, vacated and remanded.

ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1327

BOBBY LEE HOLMES, PETITIONER *v.* SOUTH CAROLINA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF SOUTH CAROLINA

[May 1, 2006]

JUSTICE ALITO delivered the opinion of the Court.

This case presents the question whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict.

## I

On the morning of December 31, 1989, 86-year-old Mary Stewart was beaten, raped, and robbed in her home. She later died of complications stemming from her injuries. Petitioner was convicted by a South Carolina jury of murder, first-degree criminal sexual conduct, first-degree burglary, and robbery, and he was sentenced to death. *State* v. *Holmes*, 320 S. C. 259, 262, 464 S. E. 2d 334, 336 (1995). The South Carolina Supreme Court affirmed his convictions and sentence, and this Court denied certiorari. *Ibid.,* cert. denied, 517 U. S. 1248 (1996). Upon state post-conviction review, however, petitioner was granted a new trial. 361 S. C. 333, 335, n. 1, 605 S. E. 2d 19, 20, n. 1 (2004).

At the second trial, the prosecution relied heavily on the following forensic evidence:

> "(1) [Petitioner's] palm print was found just above the door knob on the interior side of the front door of the victim's house; (2) fibers consistent with a black sweatshirt owned by [petitioner] were found on the victim's bed sheets; (3) matching blue fibers were found on the victim's pink nightgown and on [petitioner's] blue jeans; (4) microscopically consistent fibers were found on the pink nightgown and on [petitioner's] underwear; (5) [petitioner's] underwear contained a mixture of DNA from two individuals, and 99.99% of the population other than [petitioner] and the victim were excluded as contributors to that mixture; and (6) [petitioner's] tank top was found to contain a mixture of [petitioner's] blood and the victim's blood." *Id.,* at 343, 605 S. E. 2d, at 24.

In addition, the prosecution introduced evidence that petitioner had been seen near Stewart's home within an hour of the time when, according to the prosecution's evidence, the attack took place. *Id.*, at 337–338, 343, 605 S. E. 2d, at 21, 24.

As a major part of his defense, petitioner attempted to undermine the State's forensic evidence by suggesting that it had been contaminated and that certain law enforcement officers had engaged in a plot to frame him. *Id.,* at 339, 605 S. E. 2d, at 22. Petitioner's expert witnesses criticized the procedures used by the police in handling the fiber and DNA evidence and in collecting the fingerprint evidence. App. 299–311, 313–323. Another defense expert provided testimony that petitioner cited as supporting his claim that the palm print had been planted by the police. *Id.*, at 326–327.

Petitioner also sought to introduce proof that another man, Jimmy McCaw White, had attacked Stewart. 361

S. C., at 340, 605 S. E. 2d, at 22. At a pretrial hearing, petitioner proffered several witnesses who placed White in the victim's neighborhood on the morning of the assault, as well as four other witnesses who testified that White had either acknowledged that petitioner was "'innocent'" or had actually admitted to committing the crimes. *Id.,* at 340–342, 605 S. E. 2d, at 22–23. One witness recounted that when he asked White about the "word . . . on the street" that White was responsible for Stewart's murder, White "put his head down and he raised his head back up and he said, well, you know I like older women." App. 119. According to this witness, White added that "he did what they say he did" and that he had "no regrets about it at all." *Id.,* at 120. Another witness, who had been incarcerated with White, testified that White had admitted to assaulting Stewart, that a police officer had asked the witness to testify falsely against petitioner, and that employees of the prosecutor's office, while soliciting the witness' cooperation, had spoken of manufacturing evidence against petitioner. *Id.,* at 38–50. White testified at the pretrial hearing and denied making the incriminating statements. 361 S. C., at 341–342, 605 S. E. 2d, at 23. He also provided an alibi for the time of the crime, but another witness refuted his alibi. *Id.,* at 342, 605 S. E. 2d, at 23.

The trial court excluded petitioner's third-party guilt evidence citing *State* v. *Gregory*, 198 S. C. 98, 16 S. E. 2d 532 (1941), which held that such evidence is admissible if it "'raise[s] a reasonable inference or presumption as to [the defendant's] own innocence'" but is not admissible if it merely "'cast[s] a bare suspicion upon another'" or "'raise[s] a conjectural inference as to the commission of the crime by another.'" App. 133–134 (quoting *Gregory, supra*, at 104, 16 S. E. 2d, at 534). On appeal, the South Carolina Supreme Court found no error in the exclusion of petitioner's third-party guilt evidence. Citing both *Gregory* and its

later decision in *State* v. *Gay*, 343 S. C. 543, 541 S. E. 2d 541 (2001), the State Supreme Court held that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence." 361 S. C., at 342–343, 605 S. E. 2d, at 24. Applying this standard, the court held that petitioner could not "overcome the forensic evidence against him to raise a reasonable inference of his own innocence." *Id.,* at 343, 605 S. E. 2d, at 24. We granted certiorari. 545 U. S. ___ (2005).

## II

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States* v. *Scheffer,* 523 U. S. 303, 308 (1998); see also *Crane* v. *Kentucky,* 476 U. S. 683, 689–690 (1986); *Marshall* v. *Lonberger,* 459 U. S. 422, 438, n. 6 (1983); *Chambers* v. *Mississippi,* 410 U. S. 284, 302–303 (1973); *Spencer* v. *Texas,* 385 U. S. 554, 564 (1967). This latitude, however, has limits. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane*, *supra,* at 690 (quoting *California* v. *Trombetta,* 467 U. S. 479, 485 (1984); citations omitted). This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, *supra,* at 308 (quoting *Rock* v. *Arkansas,* 483 U. S. 44, 58, 56 (1987)).

This Court's cases contain several illustrations of "arbitrary" rules, *i.e.*, rules that excluded important defense evidence but that did not serve any legitimate interests. In *Washington* v. *Texas,* 388 U. S. 14 (1967), state statutes

barred a person who had been charged as a participant in a crime from testifying in defense of another alleged participant unless the witness had been acquitted. As a result, when the defendant in *Washington* was tried for murder, he was precluded from calling as a witness a person who had been charged and previously convicted of committing the same murder. Holding that the defendant's right to put on a defense had been violated, we noted that the rule embodied in the statutes could not "even be defended on the ground that it rationally sets apart a group of persons who are particularly likely to commit perjury" since the rule allowed an alleged participant to testify if he or she had been acquitted or was called by the prosecution. *Id.,* at 22–23.

A similar constitutional violation occurred in *Chambers* v. *Mississippi, supra.* A murder defendant called as a witness a man named McDonald, who had previously confessed to the murder. When McDonald repudiated the confession on the stand, the defendant was denied permission to examine McDonald as an adverse witness based on the State's "'voucher' rule," which barred parties from impeaching their own witnesses. *Id.*, at 294. In addition, because the state hearsay rule did not include an exception for statements against penal interest, the defendant was not permitted to introduce evidence that McDonald had made self-incriminating statements to three other persons. Noting that the State had not even attempted to "defend" or "explain [the] underlying rationale" of the "voucher rule," *id.,* at 297, this Court held that "the exclusion of [the evidence of McDonald's out-of-court statements], coupled with the State's refusal to permit [the defendant] to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process," *id.,* at 302.

Another arbitrary rule was held unconstitutional in *Crane* v. *Kentucky, supra.* There, the defendant was pre-

vented from attempting to show at trial that his confession was unreliable because of the circumstances under which it was obtained, and neither the State Supreme Court nor the prosecution "advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence." *Id.,* at 691.

In *Rock* v. *Arkansas, supra*, this Court held that a rule prohibiting hypnotically refreshed testimony was unconstitutional because "[w]holesale inadmissibility of a defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all post-hypnotic recollections." *Id.*, at 61. By contrast, in *United States* v. *Scheffer, supra*, we held that a rule excluding all polygraph evidence did not abridge the right to present a defense because the rule "serve[d] several legitimate interests in the criminal trial process," was "neither arbitrary nor disproportionate in promoting these ends," and did not "implicate a sufficiently weighty interest of the defendant." *Id.,* at 309.

While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. See, *e.g.,* Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§1863, 1904 (1904). Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Crane, supra*, at 689–690 (quoting *Delaware* v. *Van Arsdall,* 475 U. S. 673, 679 (1986); ellipsis and brackets in original). See also *Montana* v. *Egelhoff,* 518 U. S. 37,

42 (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").

A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. See, *e.g.,* 41 C. J. S., Homicide §216, pp. 56–58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide §286, pp. 136–138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted)). Such rules are widely accepted,\* and neither petitioner

————————

  \* See, *e.g., Smithart* v. *State*, 988 P. 2d 583, 586–587 (Alaska 1999); *Shields* v. *State*, 357 Ark. 283, 287–288, 166 S. W. 3d 28, 32 (2004); *People* v. *Hall*, 41 Cal. 3d 826, 833, 718 P. 2d 99, 103–104 (1986) (en banc); *People* v. *Mulligan*, 193 Colo. 509, 517–518*,* 568 P. 2d 449, 456– 457 (1977) (en banc); *State* v. *West*, 274 Conn. 605, 624–627, 877 A. 2d 787, 802–803 (2005); *Winfield* v. *United States*, 676 A. 2d 1 (DC App. 1996) (en banc); *Klinect* v. *State*, 269 Ga. 570, 573, 501 S. E. 2d 810, 813–814 (1998); *State* v. *Rabellizsa*, 79 Haw. 347, 350–351, 903 P. 2d 43, 46–47 (1995); *People* v. *Fort*, 248 Ill. App. 3d 301, 314, 618 N. E. 2d 445, 455 (1993); *State* v. *Adams*, 280 Kan. 494, 504–507, 124 P. 3d 19, 27–29 (2005); *Beaty* v. *Commonwealth*, 125 S. W. 3d 196, 207–208 (Ky. 2003); *State* v. *Dechaine*, 572 A. 2d 130, 134 (Me. 1990); *Commonwealth* v. *Scott*, 408 Mass. 811, 815–816, 564 N. E. 2d 370, 374–375 (1990); *State* v. *Jones*, 678 N. W. 2d 1, 16–17 (Minn. 2004); *Moore* v. *State*, 179 Miss. 268, 274–275, 175 So. 183, 184 (1937); *State* v. *Chaney*, 967 S. W. 2d 47, 55 (Mo. 1998) (en banc); *State* v. *Cotto*, 182 N. J. 316, 332–333,

nor his *amici* challenge them here.

In *Gregory*, the South Carolina Supreme Court adopted and applied a rule apparently intended to be of this type, given the court's references to the "applicable rule" from Corpus Juris and American Jurisprudence:

> "'[E]vidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party.'" 198 S. C., at 104–105, 16 S. E. 2d, at 534–535 (quoting 16 C. J., Criminal Law §1085, p. 560 (1918) and 20 Am. Jur., Evidence §265, p. 254 (1939); footnotes omitted).

In *Gay* and this case, however, the South Carolina Supreme Court radically changed and extended the rule. In *Gay*, after recognizing the standard applied in *Gregory*, the court stated that "[i]n view of the strong evidence of appellant's guilt—especially the forensic evidence—. . . the proffered evidence . . . did not raise 'a reasonable inference' as to appellant's own innocence." *Gay*, 343 S. C., at

---

865 A. 2d 660, 669–670 (2005); *Gore* v. *State*, 2005 OK CR 14, ¶¶13–24, 119 P. 3d 1268, 1272–1276; *State* v. *Gregory*, 198 S. C. 98, 104–105, 16 S. E. 2d 532, 534–535 (1941); *Wiley* v. *State*, 74 S. W. 3d 399, 405–408 (Tex. Crim. App. 2002); *State* v. *Grega*, 168 Vt. 363, 375, 721 A. 2d 445, 454 (1998); *State* v. *Thomas*, 150 Wash. 2d 821, 856–858, 83 P. 3d 970, 988 (2004) (en banc); *State* v. *Parr*, 207 W. Va. 469, 475, 534 S. E. 2d 23, 29 (2000) *(per curiam); State* v. *Denny*, 120 Wis. 2d 614, 622–625, 357 N. W. 2d 12, 16–17 (Wis. App. 1984).

550, 541 S. E. 2d, at 545 (quoting *Gregory, supra,* at 104, 16 S. E. 2d, at 534, in turn quoting 16 C. J., §1085, at 560). Similarly, in the present case, as noted, the State Supreme Court applied the rule that "where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt" may (or perhaps must) be excluded. 361 S. C., at 342, 605 S. E. 2d, at 24.

Under this rule, the trial judge does not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt. Instead, the critical inquiry concerns the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues.

Furthermore, as applied in this case, the South Carolina Supreme Court's rule seems to call for little, if any, examination of the credibility of the prosecution's witnesses or the reliability of its evidence. Here, for example, the defense strenuously claimed that the prosecution's forensic evidence was so unreliable (due to mishandling and a deliberate plot to frame petitioner) that the evidence should not have even been admitted. The South Carolina Supreme Court responded that these challenges did not entirely "eviscerate" the forensic evidence and that the defense challenges went to the weight and not to the admissibility of that evidence. *Id.*, at 343, n. 8, 605 S. E. 2d, at 24, n. 8. Yet, in evaluating the prosecution's forensic evidence and deeming it to be "strong"—and thereby justifying exclusion of petitioner's third-party guilt evidence— the South Carolina Supreme Court made no mention of the defense challenges to the prosecution's evidence.

Interpreted in this way, the rule applied by the State Supreme Court does not rationally serve the end that the

*Gregory* rule and its analogues in other jurisdictions were designed to promote, *i.e.*, to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues. The rule applied in this case appears to be based on the following logic: Where (1) it is clear that only one person was involved in the commission of a particular crime and (2) there is strong evidence that the defendant was the perpetrator, it follows that evidence of third-party guilt must be weak. But this logic depends on an accurate evaluation of the prosecution's proof, and the true strength of the prosecution's proof cannot be assessed without considering challenges to the reliability of the prosecution's evidence. Just because the prosecution's evidence, *if credited*, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case. And where the credibility of the prosecution's witnesses or the reliability of its evidence is not conceded, the strength of the prosecution's case cannot be assessed without making the sort of factual findings that have traditionally been reserved for the trier of fact and that the South Carolina courts did not purport to make in this case.

The rule applied in this case is no more logical than its converse would be, *i.e.*, a rule barring the prosecution from introducing evidence of a defendant's guilt if the defendant is able to proffer, at a pretrial hearing, evidence that, if believed, strongly supports a verdict of not guilty. In the present case, for example, the petitioner proffered evidence that, if believed, squarely proved that White, not petitioner, was the perpetrator. It would make no sense, however, to hold that this proffer precluded the prosecution from introducing its evidence, including the forensic evidence that, if credited, provided strong proof of the petitioner's guilt.

The point is that, by evaluating the strength of only one

Opinion of the Court

party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt. Because the rule applied by the State Supreme Court in this case did not heed this point, the rule is "arbitrary" in the sense that it does not rationally serve the end that the *Gregory* rule and other similar third-party guilt rules were designed to further. Nor has the State identified any other legitimate end that the rule serves. It follows that the rule applied in this case by the State Supreme Court violates a criminal defendant's right to have "'a meaningful opportunity to present a complete defense.'" *Crane*, 476 U. S., at 690 (quoting *Trombetta,* 467 U. S., at 485).

### III

For these reasons, we vacate the judgment of the South Carolina Supreme Court and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*