IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-40338

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

RYAN JAMES EFF

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before REAVLEY, BENAVIDES, and ELROD, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant Ryan James Eff ("Eff") appeals his conviction on three counts of arson in violation of 18 U.S.C. § 844(f)(1) and (2), asserting that the district court erred by excluding the testimony of his two expert witnesses supporting his insanity defense. We affirm the conviction because when considering the appropriate reach of the expert testimony and other evidence in the light most favorable to Eff, the evidence was insufficient to warrant a jury instruction on insanity.

I.

Eff worked as a firefighter for the United States Forest Service ("USFS"). Beginning in May 2005, twenty-three different fires were intentionally set in the Davy Crockett National Forest, where Eff was principally assigned to fight fires. USFS Special Agent Gary McLaughlin was investigating these fires and received information making Eff a suspect in the case. Agent McLaughlin, therefore, secretly installed a Global Positioning System ("GPS") data logger on Eff's USFS vehicle. Based on the data from the GPS, Agent McLaughlin placed Eff's vehicle at the point of origin in three subsequent forest fires.

Considering Eff their prime suspect, Agent McLaughlin and Captain David Norsworthy interviewed Eff about the fires. Although Eff initially denied setting the fires, he eventually confessed to starting fifteen to twenty of the forest fires. Eff set the fires because he was angry that he was not being given an opportunity to advance in his job, he received increased experience in fighting the fires he had started, and he hoped this experience would qualify him for a promotion. Moreover, Eff received extra compensation when fighting fires.

Eff was charged with three counts of arson in violation of 18 U.S.C. § 844(f)(1) and (2).[1] Eff gave timely notice of his intent to present an insanity defense. He identified two expert witnesses to testify about a neurogenetic

---

[1] These provisions provide as follows:

(f)(1) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

(2) Whoever engages in conduct prohibited by this subsection, and as a result of such conduct, directly or proximately causes personal injury or creates a substantial risk of injury to any person, including any public safety officer performing duties, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both.

defect he has–Klinefelter's Syndrome–and its effect on his ability to appreciate the nature and quality or wrongfulness of his acts. On October 11, 2006, the district court held a Daubert hearing to consider the admissibility of the expert evidence regarding Eff's condition. After hearing the proffered expert testimony, the district court concluded that the experts' testimony should be excluded and, accordingly, refused to give a jury instruction on the insanity defense.

Eff thereafter waived his right to a jury trial and proceeded to try the case pursuant to stipulated facts, disputing only that his acts of arson created a substantial risk of injury to the responding firemen. The district court found Eff guilty on all three counts of arson and sentenced him to the statutory minimum of seven years in prison. Eff now appeals the district court's exclusion of his expert testimony.

## II.

The federal statute governing the insanity defense provides as follows:

(a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) Burden of proof.--The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C. § 17(a), (b). The burden thus rests on the defendant asserting an insanity defense "to show by 'clear and convincing evidence' that he is not guilty by reason of insanity." United States v. Dixon, 185 F.3d 393, 403 (5th Cir. 1999).

## III.

The government does not dispute that Eff has been diagnosed with Klinefelter's Syndrome, a disorder resulting from an additional X chromosome in a male's DNA. Eff proffered two expert witnesses, Dr. Carole Samango-Sprouse, Ph.D, and Dr. Kyle Boone, Ph.D, both experts in the field of

neurogenetic disorders, including Klinefelter's Syndrome, to testify about Eff's Klinefelter's Syndrome and its effects on his behavior.

A.  Dr. Carole Samango-Sprouse

Dr. Samango-Sprouse is an expert in the neurodevelopmental assessment of children, specializing in genetic disorders.  Her opinion relied heavily on a battery of tests conducted by Dr. Boone and interviews with Eff and his mother.

During the Daubert hearing, Dr. Samango-Sprouse first testified about Klinefelter's Syndrome and its general effects.  Specifically, she testified that: Klinefelter's Syndrome is a neurogenetic disorder, which is a genetic condition that, from birth, causes brain, behavioral, and neurocognitive differences; untreated Klinefelter's Syndrome causes deficient levels of testosterone in adolescent males, affecting brain development; young adolescents with Klinefelter's Syndrome have decreased volume in the frontal lobe of their brains, which controls executive functioning; the primary components of executive functioning are inhibition, attention, and working memory; executive functioning controls the ability to identify, plan, and execute a course of action; persons with Klinefelter's Syndrome and deficits in executive functioning show deficits in their ability to plan, their ability to anticipate and appreciate the consequences of their actions, and their ability to inhibit inappropriate behavior, resulting in "childlike decisions" or "magical thinking"; and Klinefelter's Syndrome resulting in executive dysfunction can constitute a severe mental disease or defect.

Dr. Samango-Sprouse next testified about the effect of Klinefelter's Syndrome on Eff's behavior, specifically his decision to set the fires in Davy Crockett National Forest.  She stated that: the tests by Dr. Boone reveal that Eff was deficient in executive functioning and his ability to make judgments and understand consequences; Eff makes judgments similar to an eight-year-old child; and when Eff set the fires, he was not thinking about the consequences or wrongfulness of his actions–he was "busy on the front part of the plan" and "was

focused on showing that he could put out a fire" so he could impress his supervisor. Dr. Samango-Sprouse concluded that Eff was unable to appreciate the nature, quality, and wrongfulness of his acts.

B. Dr. Kyle Boone

Dr. Boone runs the neuropsychology testing service at Harbor-UCLA Medical Center. She evaluated Eff with numerous tests designed to measure the functioning of his frontal lobes. Dr. Boone only briefly reviewed Eff's case history, relying on Eff's test results for her conclusions.

Dr. Boone testified that: the tests she administered to Eff measured executive skills; executive skills are higher-level thinking skills, like organization, planning, thinking through consequences, problem solving, and picking the best solution to a problem; although Eff's IQ is within normal limits, his scores on some of the executive functioning tests were equivalent to those of a mentally retarded or borderline mentally retarded person; the tests Eff did poorly on measured the ability to stop a behavior that is not appropriate to the situation, the ability to generate ideas and solutions to problems, and the ability to keep track of two different sources of information at once; Eff approaches problems similar to a ten-year-old or twelve-year-old child; and Eff has deficits in his ability to think through the consequences of his behavior. Dr. Boone concluded that Eff was suffering from a severe mental defect and was unable to appreciate the nature, quality, and wrongfulness of his acts.

IV.

The district court found Eff's expert testimony inadmissible under Federal Rules of Evidence 702 and 403. Neither the government nor the district court questioned the expertise, qualifications, or methodology of Eff's expert witnesses. The underlying basis of the district court's conclusion was the disconnect between the experts' analysis of Eff's Klinefelter's Syndrome and their stated conclusions that Eff—as a result of his condition—was unable to appreciate the

nature and quality or wrongfulness of his acts. See United States v. Eff, 461 F. Supp. 2d 529, 533-37 (E.D. Tex. 2006).

The district court's analysis, however, did not take into account Federal Rule of Evidence 704(b), which states:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704(b). Where a defendant asserts an insanity defense, "the ultimate issue is whether at the time of the crime the defendant appreciated the nature and quality or the wrongfulness of his acts." United States v. Levine, 80 F.3d 129, 134 (5th Cir. 1996) (internal quotation marks and citation omitted). An expert is thus prohibited from testifying that a severe mental disease or defect does or does not prevent a defendant from appreciating the nature and quality or wrongfulness of his acts. Dixon, 185 F.3d at 400. Therefore, Dr. Boone's and Dr. Samango-Sprouse's testimony regarding their conclusions that Eff–at the time he committed the relevant acts of arson–was unable to appreciate the nature and quality or wrongfulness of his actions is inadmissible at trial under Federal Rule of Evidence 704(b).

Given that this testimony is inadmissible, the question becomes whether the district court erred in excluding the experts' "other" testimony–that is, testimony regarding Klinefelter's Syndrome and its effect on Eff's behavior (other than testimony regarding the ultimate conclusion). Because this "other" testimony goes to Eff's mental condition at the time he committed the acts of arson, it is clearly relevant to Eff's asserted insanity defense. Furthermore, the district court properly found no problems with the reliability of this "other" expert testimony under Rule 702. Thus, this testimony should have gone before

the jury unless it was insufficient to warrant a jury instruction on insanity.[2] Therefore, the decisive issue in this case is whether such testimony was sufficient to warrant a jury instruction on Eff's insanity defense.[3] Because "sufficiency of the evidence is generally considered a legal issue," we review the district court's refusal to give a jury instruction on insanity as a question of law de novo.[4] Dixon, 185 F.3d at 403 (internal quotation marks omitted).

A jury instruction on the insanity defense is required "when the evidence would allow a reasonable jury to find that insanity has been shown with convincing clarity." Id. at 404 (internal quotation marks omitted). This standard does not require a defendant to "eliminate ambiguity from his proof or to instill certainty in the minds of the jurors" but rather only requires that the evidence "would permit the jury to find to a high probability that defendant was insane." Id. (internal quotation marks and citation omitted) (emphasis added). Additionally, out of deference to the jury's role, a court "must construe the evidence most favorably to the defendant" when deciding whether to submit the

---

[2] As explained in Section V infra, Eff's insanity defense wholly depends on this expert testimony, and this testimony is only relevant to Eff's asserted insanity defense. Thus, if this testimony was insufficient to warrant a jury instruction on insanity, then the testimony was properly excluded as irrelevant and unhelpful to the trier of fact. If, on the other hand, such testimony was sufficient to warrant a jury instruction, its exclusion was erroneous.

[3] Although the district court did not focus on this issue, it did reach it as an alternate basis for its holding, stating:

> The court finds that even if the experts' testimony were admitted, it would not allow a reasonable jury to conclude that Eff was unable to appreciate the nature and quality or wrongfulness of his actions. At best, the jury would only be able to determine that Eff had a severe mental defect that reduced his capacity for such appreciation.

Eff, 461 F. Supp. 2d at 536-37.

[4] Although Eff does not appeal the district court's refusal to provide a jury instruction on his insanity defense, Eff does appeal the district court's decision to exclude his expert testimony. As explained above, the question of whether Eff's expert testimony is sufficient to warrant a jury instruction is instrumental in determining its admissibility.

insanity defense to the jury. Id. A court may, however, "withhold the insanity instruction if it concludes that the relationship between a defendant's mental illness history and his criminal conduct has not been explained or examined in any meaningful way." Id. at 407; United States v. West, 962 F.2d 1243, 1247-48 (7th Cir. 1992) ("A judge may take this decision from the jury, like any other, if the admissible evidence . . . would not permit a reasonable jury to return a verdict of insanity.").

## V.

Ignoring the experts' testimony on the ultimate issue and construing Eff's "other" evidence supporting his insanity defense in the light most favorable to Eff, we conclude that such evidence was insufficient to warrant a jury instruction on his insanity. Even assuming that Eff's experts sufficiently established that his Klinefelter's Syndrome constituted a "severe mental disease or defect," Eff's expert testimony was insufficient to permit a rational jury to conclude, by clear and convincing evidence, that he was unable to appreciate the nature and quality or wrongfulness of his actions.

At best, Eff's expert testimony only establishes that Eff had a diminished capacity to understand and anticipate the consequences of his actions,[5] that he was not focused on the wrongfulness or the consequences of his acts of arson, and that Eff makes judgments similar to an eight-year-old child. This evidence establishes only that Eff may have had a diminished capacity to appreciate the nature and quality or wrongfulness of his actions, not that he was completely unable to appreciate such things, as required by 18 U.S.C. § 17.

---

[5] Although Dr. Samango-Sprouse testified that Eff was unable to anticipate the consequences of setting the fires, Eff's confession establishes that he was concerned about his fires harming structures or people living in the nearby neighborhood and he took measures –such as monitoring wind conditions– to ensure that his fires would not spread and threaten people or structures. Such a statement unequivocally indicates that Eff was able to appreciate at least some of the consequences of his actions, and Dr. Samango-Sprouse admitted as much when confronted with this evidence.

In fact, the undisputed evidence shows that Eff was able to appreciate the nature, quality, and wrongfulness of his actions. First, with respect to Eff's ability to appreciate the nature and quality of his acts, Eff knew what he was doing–setting fires–and, as a USFS fireman, he knew the damage and harm that fires could cause.[6] Second, with respect to Eff's ability to appreciate the wrongfulness of his acts, the evidence shows that Eff had the ability to and did appreciate that his actions were wrong. Eff set the fires in secret and initially attempted to cover up his involvement by lying to investigators. See United States v. Barton, 992 F.2d 66, 69 (5th Cir. 1993) ("[A] person's attempt to hide his commission of a crime suggests that the person knows the action is wrongful or illegal . . . ."). Furthermore, in his confession, Eff indicated that he set the fires, in part, to retaliate against his superiors for denying him opportunities to advance at the USFS, and this motivation demonstrates that Eff knew that his actions were wrong.[7] Finally, given that Eff was employed by the USFS to put out fires and knew firsthand the dangerousness of fires, the assertion that Eff's Klinefelter's Syndrome completely prevented him from knowing that setting fires was wrong seems incredible. Although Dr. Samango-Sprouse stated that Eff was unable to appreciate the wrongfulness of his actions, her substantive testimony further indicates that Eff was in fact able to tell right from wrong. Dr. Samango-Sprouse testified that Eff appreciates that his conduct was wrong as

---

[6] As explained in footnote 5 supra, Eff knew that his fires could cause harm to surrounding persons and/or structures and took measures to avoid such harm. Simply because Eff may have been unable to anticipate all of the consequences of his actions and thought that his supervisor would be impressed with his ability to subsequently put out the fires he secretly started does not mean that Eff was unable to understand the nature and quality of the actions he was taking.

[7] During his confession, Eff stated: "I did it for the extra money. I did it because Bobbie [Eff's supervisor] was pissing me off . . . because the ranger was pissing me off. I was being held back. I thought, 'I'll get you guys . . . for doing this to me.'"

an eight-year-old child appreciates that stealing is wrong–they can articulate that their actions were wrong, but they will complete the act anyway.[8]

Moreover, it appears that Eff's insanity defense is the type of legal excuse that Congress sought to exclude when it "deleted the 'volitional prong' of the commonly accepted Model Penal Code approach which had permitted acquittal if the defendant 'as a result of mental disease or defect . . . lacks substantial capacity . . . to conform his conduct to the requirements of law.'"  United States v. Pohlot, 827 F.2d 889, 896 (3d. Cir. 1987) (quoting Model Penal Code § 4.01 (1962)).  "The language of [18 U.S.C. § 17] leaves no room for a defense that raises 'any form of legal excuse based upon one's lack of volitional control' including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.'"  United States v. Worrell, 313 F.3d 867, 872 (4th Cir. 2002) (quoting United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir. 1990)); see also Pohlot, 827 F.2d at 890 ("[T]he defenses that Congress intended to preclude usually permit exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection . . . .").

Eff's expert testimony indicates that the true effect of his disorder was not that it rendered him incapable of appreciating the nature and quality or wrongfulness of his actions, but rather that it prevented him from conforming his conduct to the requirements of the law–that is, it created a diminished ability or inability to inhibit inappropriate behavior.  Dr. Samango-Sprouse testified that executive functioning affects behavior because it provides impulse

---

[8] Dr. Samango-Sprouse also stated that: "At an 8-year-old level what you would expect is: I will impress my boss because I did something that was wrong–i.e., set a fire–and then put it out; but because I put it out, that would be perceived as positive."  (emphasis added).

control and determines a person's ability to inhibit behavior.[9] Additionally, in explaining Eff's behavior, she stated that children with executive dysfunction will "repeatedly get into the same problem because they cannot stop the behavior because they so much want what they are going for." Dr. Boone also testified that people with frontal lobe dysfunction "don't have the same equipment to control their behavior" as the rest of society and have "no choice" or "less choice" over their behavior. Furthermore, Dr. Boone stated that the tests that Eff scored poorly on measured, in part, the ability to stop an inappropriate behavior. It thus appears that Eff's insanity defense is really based on his lack of volition, and Congress specifically precluded this brand of insanity defense.

This is not to say that Eff's expert testimony could not have come in to establish that he suffered from a severe mental disease or defect if Eff had other evidence that would allow a rational jury to infer that his condition rendered him unable to appreciate the nature and quality or wrongfulness of his actions. See Dixon, 185 F.3d at 406; United States v. West, 962 F.2d 1243, 1248, 1250 (7th Cir. 1992) (concluding that the expert testimony supporting the defendant's claim of a severe mental defect was erroneously excluded because other evidence could establish that the defendant could not understand that his actions were wrong). As the district court noted: "The testimony about Klinefelter causing a severe mental defect might be admissible if there was other evidence to tie that mental defect into an inability (rather than reduced capacity) by Eff to appreciate the wrongfulness of his acts." Eff, 461 F. Supp. 2d at 537. The

---

[9] Dr. Samango-Sprouse stated:

Well, it is executive function that determines your ability to inhibit. So, all of us may get angry and we may think about punching someone in the nose; but it is our frontal lobe that's sort of, in a Freudian way, like our superego. It gives us the ability not to do it. So, it prevents road rage or prevents the employee from punching the boss in the nose because the boss has said something they don't like.

district court, however, found that Eff "did not present the testimony of these two experts as mere 'building blocks,' which would be tied in with other evidence to establish Eff's inability to appreciate the nature and quality or wrongfulness of his actions," and, thus, Eff's case "rest[ed] squarely on the experts' testimony."[10] Id. On appeal, Eff does not challenge this conclusion nor does Eff point to any evidence–besides the testimony of his experts–supporting his insanity defense. Eff's expert testimony thus forms the basis of his insanity defense, and, as explained above, such testimony is simply insufficient to warrant a jury instruction.

Given that Eff's expert testimony could not support an insanity defense and was offered only to support such a defense,[11] such testimony became irrelevant and unhelpful to the trier of fact, and there was no error in its exclusion. Eff's claim that the district court's exclusion of his expert testimony violated his Sixth Amendment right to present a meaningful defense is, therefore, meritless. See Holmes v. South Carolina, 547 U.S. 319, 326 (2006) ("While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other

---

[10] The district court did note that Eff also intended to introduce testimony from family members regarding "Eff's problems growing up and various learning disabilities." Eff, 461 F. Supp. 2d at 537 n.5. The district court determined, however, that this testimony was summarized in the report of one of his experts and essentially concluded that such testimony did not provide any additional support for Eff's insanity defense. See id.

[11] Eff does argue that "diminished capacity" evidence is admissible to "defeat the mental state requirement of a specific intent crime." Even if this legal proposition is correct, as numerous other circuits have concluded, see, e.g., United States v. Cameron, 907 F.2d 1051, 1062-66 (11th Cir. 1990), Eff wholly failed to explain–on appeal and before the district court–how his mental condition negated his intent. Furthermore, it is clear that Eff satisfied the "malicious" intent element of § 844(f)(1), as Eff at the very least acted with willful disregard of the likelihood that damage would result from his fires. See United States v. Corona, 108 F.3d 565, 571 (5th Cir. 1997).

factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.").

## VI.

For the foregoing reasons, the judgment of the district court is AFFIRMED. Accordingly, Appellant's Motion for Bond Pending Appeal is DENIED.