IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2007 Session

## DONNIE E. JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County
No. 85-01202     W. Otis Higgs, Jr., Judge**

_____

**No. W2006-02208-CCA-R3-PD - Filed March 22, 2007**

_____

In 1985, the Petitioner, Donnie E. Johnson, was convicted of the first degree murder of his wife, Connie Johnson. *See State v. Johnson*, 734 S.W.2d 154, 155 (Tenn. 1987), *cert. denied*, 485 U.S. 994, 108 S. Ct. 1303 (1988). The jury imposed and the trial court approved a sentence of death. *Id.* The conviction and sentence were affirmed on direct appeal by both the Court of Criminal Appeals and the Tennessee Supreme Court. The Petitioner later sought post-conviction relief, which was unsuccessful. *See Donnie E. Johnson v. State*, No. 02C01-9111-CR-00237, 1997 WL 141887, at * 1 (Tenn. Crim. App., at Jackson, Mar. 27, 1997), *perm. to appeal denied*, (Tenn. Sept. 8, 1997); *Donnie Edward Johnson v. State,* No. 02C01-9111-CR-00237, 1995 WL 603159 (Tenn., Oct. 9, 1995); *Donnie Edward Johnson v. State*, No. 02C01-9111-CR-00237, 1994 WL 90483, at *1 (Tenn. Crim. App., at Jackson, Mar. 23, 1994); *Donnie Edward Johnson v. State*, No. 02-S-01-9207-CR-00041, 1993 WL 61728, at *1 (Tenn. Crim. App., at Jackson, Mar. 8, 1993). On June 9, 2006, Petitioner Johnson filed a petition to compel testing of biological evidence as provided by the Post-Conviction DNA Analysis Act of 2001. The post-conviction court denied the petition on October 9, 2006. Upon review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Donald E. Dawson, Nashville, Tennessee, for the Appellant, Donnie E. Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General, for the Appellee, State of Tennessee.

**OPINION**

1

**Factual Background**

On December 8, 1984, Connie Johnson, the wife of Petitioner Donnie E. Johnson, was murdered by means of suffocation. *See Johnson*, 734 S.W.2d at 155. As recited by our supreme court, the following facts summarized the proof as developed at trial.

At the time of Connie Johnson's murder, the Petitioner was employed at a Memphis camping equipment center. *Id.* Also employed at the center was Ronnie McCoy, a prisoner on work release. *Id.* at 156. Ronnie McCoy testified that Petitioner Johnson "killed Mrs. Johnson at [the camping equipment center] in the early evening of Saturday December 8, 1984, the time of death being estimated at between 6:30 and 7 p.m." *Id.* at 155-156. Ronnie McCoy further explained that "he left [the Petitioner] and Mrs. Johnson alone in the office of the camping center while McCoy attended to some chores prepatory to leaving the place of business for the day." *Id.* at 156. McCoy stated that he was gone "for some ten to fifteen minutes, and when he returned to the office . . . he found Mrs. Johnson strangled or suffocated to death." *Id.* It is undisputed that both the Petitioner and Ronnie McCoy "collaborated, willingly or otherwise, in transporting the body of Mrs. Johnson in her 1981 Ford van from the sales office to a shopping center a few miles away." *Id.* "They also placed inside the van her broken spectacles, her shoes, her coat and some earrings which had become dislodged in her struggle for breath." *Id.* The van was left at the shopping center. *Id.* The Petitioner then transported McCoy to the penal farm in the Petitioner's pickup truck. *Id.*

The next morning, Petitioner Johnson contacted his employer inquiring as to his wife's whereabouts. *Id.* Petitioner Johnson further informed his employer that his wife was supposed to have gone Christmas shopping on the previous evening. *Id.* Petitioner Johnson's employer, Mr. James Force, and his wife agreed to assist the Petitioner in his search for his wife. *Id.* In doing so, Mr. and Mrs. Force found Connie Johnson's van in the shopping center. Upon opening the van, they found the lifeless body of Mrs. Johnson. *Id.* A large plastic garbage bag had been forced into Mrs. Johnson's mouth, resulting in her strangulation and asphyxiation. *Id.* She bled from the nose and ears, and traces of blood were later found on a couch in the office where her death occurred. *Id.* No ignition keys were found in the van. A subsequent search of the Appellant's truck revealed the ignition keys to Mrs. Johnson's van along with her hairbrush and some other personal items. *Id.* The ignition keys were the only set of keys to the van. *Id.*

During the police investigation, Petitioner Johnson denied any involvement in the death of his wife and at no time ever implicated McCoy in her death. *Id.* The Petitioner also denied having any knowledge of when or how his wife's van had reached the shopping center. *Id* at 157. The Petitioner did not testify during the guilt phase of his trial. Rather, it was only at the penalty phase that the Petitioner took the stand and denied killing his wife, placing blame on Ronnie McCoy. *Id.* at 156. Petitioner Johnson testified that he was the one who left McCoy and his wife alone in the sales office for a few minutes. *Id.* He explained that he had given his wife approximately $450 that day for Christmas shopping. He believed that McCoy had tried to rob his wife and killed her in the process. *Id.*

2

While our supreme court acknowledged that "there is no question but that [Petitioner Donnie E. Johnson] or one Ronnie McCoy murdered [Connie Johnson]," our supreme court noted that the two men "collaborated, willingly or otherwise, in transporting the body of Mrs. Johnson . . . from the sales office to a shopping center a few miles away." *Id.* The supreme court further noted that Petitioner Johnson's testimony was "unconvincing."

## I. Petitioner Johnson's Request

On June 9, 2006, Petitioner Donnie E. Johnson filed, pursuant to Tennessee Code Annotated, section 40-30-301, a petition for DNA analysis in the Shelby County Criminal Court.[1] In his petition, Johnson requested testing of the garbage bag that was found in Mrs. Johnson's mouth. Relying upon our supreme court's statement that "there is no question but that [Petitioner Johnson] or one Ronnie McCoy murdered her," the Petitioner asserts that DNA testing of the garbage bag can prove the Petitioner's innocence and McCoy's guilt.

Petitioner Johnson asserts that the garbage bag is in the possession of the Clerk of Court for the Thirtieth Judicial District and is in such condition that DNA analysis may be conducted. He further asserts that the plastic garbage bag has never been subjected to DNA analysis. The Petitioner further maintains that "[f]orensic DNA analysis of biological material on [the plastic garbage bag] can establish with precision who forced the garbage bag into Mrs. Johnson's mouth. Specifically, skin cells, sweat, saliva and other biological material transferred from the perpetrator onto the garbage bag can answer the critical question [of who killed Mrs. Johnson, the Petitioner or Ronnie McCoy]." In this regard, Petitioner Johnson maintains that "[a] reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the verdict against Mr. Johnson or his sentence more favorable if the results had been available at his trial."

The State of Tennessee filed a response to Petitioner Johnson's request for DNA testing, asserting that the Petitioner cannot satisfy prong one of the DNA statute in that even if the DNA of Ronnie McCoy is found on the garbage bag, Petitioner Johnson would still have been charged and convicted of the murder of Connie Johnson. Specifically, the State argues that, as both men worked at the location where the plastic garbage bag was stored, the finding of the DNA on the garbage bag from McCoy would not exonerate the Petitioner. Additionally, the State contends that any DNA from random skin cells from a third party would have been overcome by the victim's DNA.

## II. Post-Conviction Court's Ruling

---

[1]At the time of the filing of the petition, the Petitioner's execution was scheduled for October 25, 2006. On October 19, 2006, the Sixth Circuit Court of Appeals entered an order staying the Petitioner's execution "until further order of this court." *See Donnie E. Johnson v. Ricky Bell*, No. 05-6925 (6th Cir. Oct. 19, 2006).

On October 9, 2006, the post-conviction court entered its order denying post-conviction DNA testing. The court determined that "the petitioner has failed to meet the criteria for DNA Analysis, under both the mandatory and discretionary portions of the Act, as outlined in Tenn. Code Ann. § 40-30-301 *et seq*." Specifically, the post-conviction court found that, "[g]iven the circumstances of the victim's murder and the evidence presented at trial," the absence of the Petitioner's DNA on the garbage bag would not create a reasonable probability that he would either not have been prosecuted or would not have been convicted of his wife's murder. Similarly, neither would the presence of Ronnie McCoy's DNA on the garbage bag create a reasonable probability that the Petitioner would either not have been prosecuted or would not have been convicted of the murder. In reaching these conclusions, the lower court acknowledged that "evidence presented at trial, indicated the victim struggled with her attacker and the violent nature of her death led her to deposit vomit, saliva, mucus, blood and perhaps other biological specimens onto the bag." Additionally, the garbage bag was taken from a public place and it is possible that various DNA samples from multiple persons could have been deposited on the bag prior to the murder.

The lower court acknowledged that "[t]here is no question that McCoy was involved in removing the victim's body from the office to her car." In this regard, the post-conviction court opined that "it is possible that during this interaction McCoy may have deposited DNA on the garbage bag." The post-conviction court concluded that, "even if the DNA belongs to McCoy, it could have just as easily been deposited on the garbage bag prior to or subsequent to the murder. Thus, the presence of McCoy's DNA on the bag would not, alone, demonstrate [P]etitioner's innocence."

### III. The Post-Conviction DNA Analysis Act

The Post-Conviction DNA Analysis Act of 2001 provides that a person convicted of certain enumerated crimes, including first degree murder, may, *at any time*, file a petition requesting forensic DNA analysis of any evidence (1) in the possession or control of the prosecution, law enforcement, laboratory, or court, and (2) that is related to the investigation or prosecution which resulted in the judgment of conviction and which may contain biological evidence. T.C.A. § 40-30-303 (2003). The Act provides no statutory time limit and gives petitioners the opportunity to request analysis at "any time," whether or not such a request was made at trial. *Griffin v. State*, 182 S.W.3d 795, 799 (Tenn. 2006). A post-conviction court is obligated to order DNA analysis when the petitioner has met each of the following four conditions:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such condition that DNA analysis may be conducted;

4

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

T.C.A. § 40-30-304 (2003); *see also Griffin*, 182 S.W.3d at 798. Additionally, if DNA analysis would have produced a more favorable verdict or sentence if the results had been available at the proceedings leading up to the conviction or sentence, then the post-conviction court may order DNA analysis when the petitioner meets the same conditions. T.C.A. § 40-30-305 (2003); *see also Griffin*, 182 S.W.3d at 798. In either instance, some physical evidence must be available and in a proper condition to enable a DNA analysis. T.C.A. § 40-30-304(2); § 40-30-305(2).

"If the state contests the presence of any qualifying criteria and it is apparent that each prerequisite cannot be established, the [post-conviction] court has the authority to dismiss the petition." *Marcus Nixon v. State*, No. W2005-02158-CCA-R3-WM, 2006 WL 851764, at *3 (Tenn. Crim. App., at Jackson, Apr. 3, 2006) (quoting *William D. Buford v. State*, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App., at Nashville, Apr. 24, 2003), *perm. to appeal denied,* (Tenn., 2003)). That is, a petitioner's failure to meet any of the qualifying criteria is fatal to the action. *Buford*, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6.

The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited. *See Sedley Alley v. State*, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at * 4 (Tenn. Crim. App., at Jackson, May 26, 2004), *perm. to appeal denied*, (Tenn., Oct. 4, 2004), *cert. denied*, 544 U.S. 950, 125 S. Ct. 1695 (2005) (citing *Jack Jay Shuttle v. State*, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *4 (Tenn. Crim. App., at Knoxville, Dec. 16, 2003), *perm. to appeal denied*, (Tenn. Apr. 2, 2004) (citation omitted)). In making its decision, the post-conviction court must consider all the available evidence, including the evidence presented at trial and any stipulations of fact made by either party. *Id.* The lower court may also consider the opinions of this Court and the Tennessee Supreme Court on direct appeal of the petitioner's convictions or the appeals of the petitioner's prior post-conviction or habeas corpus actions. *Id.* On appellate review, this Court will not reverse unless the judgment of the lower court is not supported by substantial evidence. *Id.* (citing *Willie Tom Ensley v. State*, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *4 (Tenn. Crim. App., at Nashville, Apr. 11, 2003)).

## IV. Satisfying the Statutory Criteria

### A. Existence of Evidence and Prior Testing of Evidence

The lower court found that the plastic garbage bag was still in existence and had never been subjected to DNA testing. The lower court noted that "[i]t is somewhat unclear to this court whether the evidence in question is still in a condition that would allow it to be subjected to DNA Analysis." We would observe that no expert testimony was offered by the Petitioner at the hearing with regard to this issue. Nonetheless, while acknowledging the "unknown" condition of the bag at the present, the court assumed "the bag is in suitable condition for testing."

As there has not been sufficient proof to contradict the finding of the lower court that the sample is sufficient for DNA testing, this Court will presume that biological evidence still exists and is of sufficient quantity and condition to be tested for purposes of evaluating the statutory criteria. *See* T.C.A. § 40-30-304(2),(3); § 40-30-305(2), (3).

## B. Reasonable Probability of Different Result

The Post-Conviction DNA Analysis Act was enacted in recognition of the possibility that a person has been wrongfully convicted or sentenced. *Shuttle*, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *5 (citation omitted). In this regard, the post-conviction court is to assume that the "DNA analysis will reveal exculpatory results in the court's determination as to whether to order DNA testing." *Id.* The Petitioner asserts, relying upon prior decisions of this Court, *see generally Shuttle*, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *1, that the determination of whether a particular case meets the reasonable probability standard is not based on the type of evidence that was used to obtain the conviction, nor on the strength of the State's case. Rather, he contends that what is decisive under the reasonable probability standard is the probative value of the evidence sought to be tested or, in other words, the significance that exculpatory DNA test results would have in the case.

Continuing, Petitioner Johnson argues that the lower court, although reciting the reasonable probability language of the statute, "erroneously imposed a higher, actual innocence burden." In support of this contention, Petitioner Johnson cites to the lower court's statement "merely exculpatory results without comparison to McCoy would not establish a reasonable probability that prosecutor's [sic] would forego their prosecution of petitioner or that a jury would have acquitted him of this crime." Petitioner Johnson asserts that the "reasonable probability" standard does not require the applicant to show that favorable test results will wholly exonerate him or prove his "actual innocence," or even that the tests are likely to come back in his favor. Petitioner Johnson further asserts that the lower court improperly based the "reasonable probability" requirement on the strength of the State's case. Furthermore, in support of his request for DNA testing, the Petitioner asserts that the evidence, *i.e.,* the plastic garbage bag, is "clearly 'linked to the commission of the crime.'" He contends that the lower court was required to presume that DNA from this evidence would have come from Ronnie McCoy and not the Petitioner. He further concludes that if the DNA evidence from the plastic garbage bag comes from Ronnie McCoy, then there is a reasonable probability that Petitioner would not have been prosecuted or convicted because there would be DNA evidence that he did not touch the murder weapon.

6

In both *Alley I* and *Alley II,* this Court recognized that "[a] 'reasonable probability' of a different result exists when the evidence at issue, in this case potentially favorable DNA results, undermines confidence in the outcome of the prosecution." *Sedley Alley v. State*, No. W2006-01179-CCA-R3-PD, 2006 WL 1703820, at *9 (Tenn. Crim. App., at Jackson, June 22, 2006), *perm. to appeal denied,* (Tenn. June 27, 2006); *Sedley Alley v. State*, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *9; *see, e.g., State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). Notwithstanding its consideration of the "potentially favorable" DNA testing results, the reviewing court cannot ignore the existing evidence. *See Alley*, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *9. That is, the convicted defendant requesting post-conviction DNA analysis is not provided a presumption of innocence, and the reviewing court need not ignore all the other proof supporting the conviction.

### 1. Third-Party Evidence

In its order, the post-conviction court, recognizing this Court's holding in *Alley II*, affirmed the State's position that a comparison with a third-party's DNA is not permitted under the Act. In this regard, the Petitioner raises numerous challenges to this Court's holding that the Post-Conviction DNA Analysis Act scope excludes third-party evidence.

This Court held, in *Alley II,* that "[t]he Act's reach is limited to the performance of DNA analysis which compares the petitioner's DNA to samples taken from biological specimens gathered at the time of the offense." *Alley*, No. W2006-01179-CCA-R3-PD, 2006 WL 1703820 at *9. The results of DNA testing must stand alone and do not encompass a speculative nationwide search for the possibility of a third party perpetrator. The Petitioner asserts that the "*Alley* Rule creates obstacles to full participation by artificially limiting the scope of the DNA Act's enquiry to not include the real-world possibility of an outcome-changing-third-party match." He additionally contends that the *Alley* Rule is contrary to the holding of the United States Supreme Court in *Holmes v. South Carolina*, 547 U.S. ___, 126 S. Ct. 1727 (2006), and violates established principles of procedural due process. This Court addressed and rejected the Petitioner's concerns in *Alley*, No. W2006-01179-CCA-R3-PD, 2006 WL 1703820, at *8-9.

Further, it does not appear that the post-conviction court applied the holding in *Alley II,* referred to by the Petitioner as the *Alley II* Rule, in the present case. The post-conviction court distinguished the situation in *Alley II*, where petitioner sought to compare DNA samples found on certain evidence to DNA samples of unknown third parties, to the situation in the present case where the Petitioner seeks to compare recovered DNA with DNA samples taken from a potential accomplice at the time of the original prosecution, *i.e.*, Ronnie McCoy. While the lower court acknowledged that the Post-Conviction DNA Analysis Act did not appear to permit the DNA to be compared to that of Ronnie McCoy, the court assumed that McCoy's DNA was available to be tested and that DNA analysis would show Ronnie McCoy's DNA on the garbage bag. The lower court's presumptions were made with the acknowledgments that McCoy could not be forced to provide a new DNA sample and that it was not clear that the existing samples were in such condition for a comparison due to their age.

## 2. Evidence of Petitioner's Guilt

A summary of the existing evidence supporting the Petitioner's identification as the perpetrator of the victim's murder is as follows:

1. The Petitioner and the victim were married and had experienced difficulties in their marriage. The victim, Connie Johnson, had previously threatened to separate from the Petitioner.

2. Ronnie McCoy testified that, on the evening of December 8, 1984, he had left the Petitioner and Mrs. Johnson alone in the office at the camping center for approximately ten to fifteen minutes. When McCoy returned to the office, Mrs. Johnson was dead.

3. The Petitioner and Ronnie McCoy transported the body of Connie Johnson in Mrs. Johnson's van and left the van with the deceased's body in a shopping center parking lot.

4. The Petitioner and Ronnie McCoy placed Mrs. Johnson's glasses, shoes, coat and earrings in the van.

5. The Petitioner contacted Barry Pfister at 9:00 p.m. on Saturday evening, inquiring about his wife. Specifically, he informed Pfister that his wife was going to meet him at the sales office and asked Pfister to inform her that he was on his way.

6. The Petitioner drove to the place of employment of a former girlfriend between 7:30 and 8:00 p.m. on Saturday evening.

7. The Petitioner contacted his employer the next morning making an inquiry as to the whereabouts of his wife.

8. Mrs. Johnson's van contained no ignition keys. Mrs. Johnson's ignition keys, the only set, and other personal items were found behind the seat of the Petitioner's truck.

9. In his statement to the police, the Petitioner never mentioned Ronnie McCoy as a suspect in the death of the victim. Indeed, the Petitioner first implicated Ronnie McCoy at the penalty phase of his trial, only after being found guilty of the first

degree murder of his wife. The Petitioner offered no explanation as to why he did not report McCoy's involvement in the homicide until the penalty phase.

This Court further recognizes that there is no dispute that both the Petitioner and Ronnie McCoy were present at the time the body of the victim was transported.

### 3. Review of Lower Court's Findings

The post-conviction court concluded that "[g]iven the evidence presented at trial and the circumstances surrounding the victim's death . . . , this court can not say that the presence of McCoy's DNA on the garbage bag used to suffocate the victim, if known prior to trial, would have precluded the prosecution or conviction of petitioner for the murder of his wife." The court added that "this court can not say that, even if exculpatory results were produced, the confidence in the outcome of the prosecution of petitioner's case would be undermined."

In reaching its conclusion, the lower court considered the fact that "the garbage bag that was used to suffocate the victim was taken from the petitioner's office, a public place." Thus, the court acknowledged that DNA samples from numerous persons, including Ronnie McCoy, could have been deposited on the garbage bag. Additionally, it is probable that Ronnie McCoy's DNA was deposited on the garbage bag during his admitted involvement in the transfer of the victim's body. Given McCoy's employment at the camping center and his involvement in the transfer of the victim's body, it is probable that Ronnie McCoy's DNA is on the garbage bag. Thus, considering these facts, this Court, as found by the lower court, cannot conclude that the presence of McCoy's DNA on the garbage bag would have led the State to forego prosecution and/or resulted in the Petitioner not being convicted. Moreover, this Court, as found by the post-conviction court, cannot conclude that the presence of Ronnie McCoy's DNA on the plastic garbage bag would have rendered the Petitioner's verdict or sentence more favorable. Accordingly, this Court concludes that the post-conviction court has not abused its discretion in denying post-conviction DNA analysis on the plastic garbage bag.

### C. Motivation of Bringing Petition

The post-conviction concluded that it "ha[d] serious questions regarding the motivations of the petitioner for raising this issue at this time." While acknowledging that a petition for post-conviction DNA analysis may be brought at any time, the post-conviction court noted that the item which Petitioner now seeks to have tested has been available since before the Petitioner's trial. The post-conviction court further noted that the present petition was the first attempt by Petitioner, since the passage of the Post-Conviction DNA Analysis Act in 2001, to have the plastic garbage bag tested. Given the fact that the Petitioner's request was made four months prior to his scheduled execution, the post-conviction court found the motivation in bringing the petition suspect. Notwithstanding these concerns, the court accepted defense counsel's assertions regarding the evolution of DNA testing.

**CONCLUSION**

Based upon our review of the record before us, including the Petitioner's brief and the State's response, we conclude that the post-conviction court properly considered all of the evidence before it.  Moreover, we conclude that the record supports the post-conviction court's conclusions that the Petitioner failed to establish that  (1) a reasonable probability exists that the Petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis and (2) a reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the Petitioner's verdict or sentence more favorable if the results had been available at the proceedings leading to the judgment of conviction.  *See* T.C.A. §§ 40-30-304(1), -305(1).  Accordingly, the post-conviction court did not err by denying the Petitioner's request for DNA analysis.

The judgment of the post-conviction court is affirmed.

_____
**DAVID G. HAYES, JUDGE**