Filed 12/4/15  P. v. Aragon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C068914 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F08254) |
| v. | |
| JONATHAN RAY ARAGON, | |
| Defendant and Appellant. | |

Defendant, Jonathan Ray Aragon, stands convicted by a jury of failing to register as a sex offender in violation of Penal Code section 290.018, subdivision (b).  (Unless otherwise stated, statutory references that follow are to the Penal Code.)

On appeal, defendant argues the trial court erred in excluding, pursuant to Evidence Code section 352, evidence of issues raised on appeal from a prior conviction for failing to register as a sex offender.  We hold the trial court did not err in excluding the evidence and affirm the judgment.

1

In December 1994, defendant was convicted of willfully committing a lewd act on a child under the age of 14 years in violation of section 288, subdivision (a).  After he was released from prison, and as a consequence of that conviction, defendant was required to register as a sex offender pursuant to section 290.  (§ 290.003.)

In *People v. Aragon*, (Sacramento County Superior Court No. 10F03266) filed in 2010 ("the 2010 conviction") defendant was convicted of violating section 290.018, subdivision (b) of the Sexual Offender Registration Act (§ 290 *et seq.*; "the Act") by failing to register his residence address with the proper authorities.  We reversed his conviction on appeal on June 29, 2012.  (*People v. Aragon* (2012) 207 Cal.App.4th 504.)  We take judicial notice of that decision and recite the following facts set forth therein.

"Defendant was convicted in 1995 of lewd conduct with a child.  (§ 288.)  After a period of incarceration, he was released on November 27, 2000, under the supervision of the Sacramento County Probation Department.  At the time of his release, defendant was notified of his duty to register as a sex offender under the Act.  The written form, which an officer reviewed with defendant, explained 16 aspects of the duty to register.  It did not, however, explain the difference between a transient and someone who has a residence.  The closest statement in that regard was, 'If I have no residence address, I must update my registration at least once every 90 days [(now 30 days)] and annually within 5 working days of my birthday.'  (Boldface omitted.)  The form also stated, 'I must provide proof of residence with a California Drivers License or identification card or a recent rent or utility bill.  This proof is required within 30 days of registration.'  (Boldface omitted.)  Defendant indicated on the form that he expected to be a transient upon release.

"In December 2009, defendant's brother . . . invited defendant to park defendant's travel trailer on the street in front of [the brother's] duplex because it had been cold at

night. [The brother] plugged an extension cord into a garage outlet and allowed defendant to plug it into the electrical system of his travel trailer, giving defendant light and heat. Defendant also used [his brother's] hose to fill his water tank. Defendant entered the duplex only occasionally. About three times in a period of several months, defendant used the bathroom in [the brother's] duplex. Defendant lived in the travel trailer in front of [the brother's] duplex until April or May 2010, when code enforcement personnel had him move it.

"During the period relevant to this appeal, January to April 2010, defendant registered with the Sacramento County Sheriff's Department each month. To register, defendant appeared at the sheriff's office and was interviewed by an officer. Defendant completed and signed a form supplied by California's Department of Justice. On the front of the form, along with identifying information, defendant indicated that he was a transient and provided his cell phone number. The back of the form contained 20 advisements concerning the duty to register. Defendant initialed each of the 20 advisements and signed the form, certifying that the information on the form was true.

"Among other advisements, the form stated: 'If I am registered at a residence address and become transient or am registered as a transient and move to a residence, I have five (5) working days within which to register in person with the law enforcement agency having jurisdiction over the new address or to register as a transient.' The form also stated: 'If I have no residence address, I must register in person, in the jurisdiction where I am physically present as a transient within five (5) working days of becoming transient. Thereafter, I must update my registration information in person, no less than once every 30 days with the law enforcement agency having jurisdiction over the place where I am physically present as a transient on the day I re-register….' The form left undefined the difference between having a residence and being a transient, and, when he registered at the Sacramento County Sheriff's Department, defendant was not advised verbally of the difference between having a residence and being a transient. When sex

3

offenders register in Sacramento County, they are told to ask the officer if they have any questions about the registration requirements." (*Aragon*, *supra,* 207 Cal.App.4th at pp. 508-509.)

Defendant was prosecuted and convicted of violating section 290.018, subdivision (b). On appeal defendant argued that the evidence was insufficient to convict him of a willful violation of the statute because there was no evidence that he knew that living in his travel trailer in front of his brother's house required him to register that house as his residence rather than registering as a transient. We agreed and, as noted, reversed his conviction.

In the present matter, the parties stipulated that defendant was released from jail custody in November 2010. After his release on this occasion, his niece allowed him to live at her house on U Street in Sacramento. The house had a detached garage alongside of which was a carport. His niece used the garage for storage.

Defendant parked his car in the carport and, during the time he was there, slept primarily in the car and kept his personal items in the garage. Defendant had a key and access to the house and he would come in to shower and use the bathroom to brush his teeth. Defendant kept his razor and toothbrush in the bathroom of the house but his niece did not know if he left his toothbrush there "regularly." He ate in the house a "few times" and had access to the food in the refrigerator. Defendant kept some of his belongings, including some of his clothing, in the garage and was allowed to use his niece's washing machine which was in the house and her dryer which was in the garage. He kept his computer in the garage and, when his niece was asked if it was plugged into an electrical outlet there, she said that she believed so.

On a couple of occasions, when the weather was cold, defendant would sleep in the house on the living room floor or on the couch in the living room.

4

At some point, defendant's niece realized her uncle was no longer staying at the house and she received a telephone call from a law enforcement officer the following day. His niece thought that defendant stayed with her for about a month.

At the time of trial, Kristen Rankin was a reserve peace officer with the Sacramento Police Department. On November 15, 2010, she registered defendant when he came to her office to register as a sex offender. On one of the forms, she wrote "Welfare Office, 29/R Street, on bench, light rail, 29 and R" which was the information she received from defendant that day after she asked him the area he frequented as a transient. The notation meant that the location he frequented was in and about 29th and R Street on the bench near the light rail station. Defendant signed the form. Before signing the form, Rankin tells registrants to read what had been written and ask her questions if they have them.

Defendant also initialed and signed a form that set out all the rules and regulations for a registrant. Again, he was told that, if he had any questions about this form, he was allowed to ask them. Defendant initialed each of the boxes next to each of the rules and regulations which meant that he understood each of them. Rankin does not recall whether defendant had any questions for her that day. The registrants are given a copy of the forms they sign.

At the time of trial, Kevin Patton was a police officer with the Sacramento Police Department. He was, at the time, a detective with the sexual assault felony enforcement team, known as "SAFE." His duties included registering sex offenders, conducting compliance investigations, and enforcing violations of section 290 of the Penal Code. If a person is registered as a transient and later finds a residence, he or she must re-register stating the new address within five working days of the move.

On December 15, 2010, Patton was in the registration office when defendant came in to update his transient status which he was required to do every 30 days. Accessing

the computer system, he found that defendant had last registered on November 15 as a transient.

In his experience, Patton had become familiar with many sex offenders who lived at a residence and many who were transient. Defendant did not present himself as a typical transient sex offender registrant. He appeared generally clean, had clean hands, clean clothing, was well-groomed and his shoes were clean. Even so, defendant told Patton defendant said he didn't live anywhere and that he slept on a bench. Given his observations, Patton told defendant Patton knew defendant was lying about his residence and asked defendant to tell Patton the truth. At that, defendant admitted he had been staying at his niece's house, primarily sleeping in his car or on a cot in the garage. He later admitted that he actually spent every day at his niece's house and had been staying there since his release from custody, although Patton did not ask him how much time each day he spent there. Defendant said he had not wanted to register his niece's address because he was concerned that his being there as a sex offender could cause her to be threatened. Patton and defendant then went to the niece's residence and an inspection of the house, garage, and carport confirmed what defendant had admitted to Patton.

Defendant testified. As is relevant to the issue before us, defendant testified that he had been registering as a sex offender since 1994, that he took his obligation to register seriously and that he tried to comply with his obligation to register "to the best of [his] ability." He said he was released from custody on November 6, 2010, and began living in the car at his niece's house on November 8, 2010.

Defendant registered as a sex offender on November 15, 2010, and initialed the form setting forth his registration requirements. At that time, he signed a document that, among other definitions, gave the definition of being "transient" within the meaning of the sex offender registration laws. Even so, he testified he did not understand what was on the form and did not understand the difference between registering as living at a

6

residence as opposed to registering as a transient. He believed he had to sign the form even though he did not understand it or he would go to jail.

On December 15, 2010, defendant again went in to update his registration with law enforcement because, having registered as a transient on November 15, he was required to re-register every 30 days. After explaining his living situation to law enforcement officers and giving them a tour of his niece's residence, defendant was placed under arrest. He did not understand that, given his living arrangement at his niece's house, he was required to register that address as his residence.

On cross-examination, defendant admitted that, in 2010, he lived in a trailer parked in front of his brother's house for about four months. During that four month period he registered as a transient every 30 days. Thereafter, defendant was arrested, prosecuted and convicted in August 2010 for being out of compliance with the registration laws by registering as a transient when he was living in a trailer in front of his brother's house. Defendant was asked whether, during the prior prosecution in 2010, there was any "confusion about whether you were actually transient or not, even though you were parked in front of your brother's house" to which defendant answered "yes." Defendant was also asked whether he remembered the whole issue in the prior trial was "what does it mean to be transient and what is a residence" to which he replied, "It seems like there was another issue there."

On redirect examination, defendant's attorney asked the following questions relating to the August 2010 trial:

"Q. Do you happen to know if that case is currently on appeal?

"A. Yes. It's in appellate review.

"Q. Have you spoken to an appellate attorney about that?

"A. Yes, I have.

"Q. Do you happen to know what the issue is on appeal?"

The People objected to the last question on grounds of hearsay and the court sustained the objection.

Shortly thereafter, following a side bar conference, the parties and the court discussed the ruling. The People argued that "having the jury know what the issues are on appeal is [not] at all probative and definitely highly prejudicial."

The court then responded: "Just largely for that reason I limited the examination to whether the prior case is on appeal. Mr. Aragon testified at some length on his understanding of what residency or transient is and why he believes it's a circuitous definition.

"The jury knows there was a trial on that. The jury knows there was a conviction. The jury knows that's up on appeal. I don't think getting into the issue of what's on appeal and what the lawyers told him, . . . adds much to what the jury already understands. And it does pose a serious risk of confusing the issues before this jury.

"And so for that reason, I limited the examination to let the jury know that the prior case is up on appeal. And I think that's sufficient."

### DISCUSSION

As set forth above, defendant was asked on redirect examination whether he knew what the issues were in the then-pending appeal from his earlier conviction for failure to properly register as a sex offender. After an objection by the prosecution, the court ruled that the answer to the question would not add much to what the jury already knew and that an answer to the question posed a "serious risk of confusing the issues" before the jury in the present trial. While not expressly invoking Evidence Code section 352, it is evident that the trial court made its ruling with that statute in mind. Defendant now argues the ruling violated his right to present a defense and thus his right to due process of law.

8

The constitutional right to present a defense is subject to established evidentiary rules designed to assure fairness and reliability in the ascertainment of guilt and innocence. (*Holmes v. South Carolina* (2006) 547 U.S. 319, 324 [164 L.Ed.2d 503]; *Chambers v. Mississippi* (1973) 410 U.S. 284, 302 [35 L.Ed.2d 297]; *People v. Lawley* (2002) 27 Cal.4th 102, 155 [ordinary rules of evidence do not impermissibly infringe on constitutional right to present a defense].) The trial court has discretion to impose reasonable limits, and the reviewing court will not disturb the judgment absent a showing that the trial court abused its discretion. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

In this matter, the trial court did not abuse its discretion. As the trial court noted, the jury already knew there had been a prior trial and conviction during which defendant testified that he did not understand the requirements for registering as a transient as opposed to listing a residence. In effect, by testifying here that he did not understand those requirements in the instant case, he opened the door to evidence of the previous prosecution allowing the jury no doubt to wonder why, if his continuing confusion was sincere, he did not explain his living arrangement leading to this prosecution to law enforcement authorities and ask them how he should register, knowing as he did that this claimed confusion had led to the previous prosecution. Placing evidence before this jury as to whether his contention that he had been confused on this point in the earlier case had later been raised on appeal added little to what the jury already knew and thus had little probative value. Further, placing before the jury evidence of the issues raised in the appeal from the earlier conviction may well have confused the jury as to how that evidence had any bearing on the issues it was asked to decide in the present matter which, to be candid, confuses us as well.

There was no error.

DISPOSITION

The conviction is affirmed.

                                                                              HULL            , J.

We concur:

_____NICHOLSON_____, Acting P. J.

_____ROBIE_____, J.

10