MEMORANDUM OPINION



No. 04-07-00095-CR



Edward VILLA,


Appellant



v.



The STATE of Texas,


Appellee



From the 187th Judicial District Court, Bexar County, Texas


Trial Court No. 2006-CR-1401


Honorable Raymond Angelini, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Phylis J. Speedlin, Justice

 Steven C. Hilbig, Justice


Delivered and Filed: February 13, 2008


AFFIRMED

 The sole issue presented in this appeal by Edward Villa from his murder conviction is that
the trial court erred in denying his fundamental due process right to introduce evidence of an
alternative perpetrator. We affirm the trial court's judgment.



Background


 On December 1, 2005, Villa met the victim, Erica Dotson, when Erica approached him and
his friend, Bonifacio Ytuarte, outside an apartment complex. Dotson was barefoot, beat up, scared,
hurt, and crying. Ytuarte and Villa gave Dotson a ride to another friend's apartment where she
showered and changed. They later returned to Ytuarte's apartment where Dotson spent the night. 
The next day, on December 2, 2005, Ytuarte took Dotson to the store where she made a phone call. 
Ytuarte later left his apartment between 10:15 p.m. and 10:30 p.m., instructing Dotson to lock the
door behind him. Villa admitted that he later arrived at Ytuarte's apartment after midnight, and he
and Dotson ingested or injected cocaine and heroin.

 Early in the morning on December 3, 2005, Villa broke into another apartment covered in
blood, stating that he was dying and the Mexican Mafia was after him. Villa also said, "She's dead."

 When the officers arrived at the scene, they witnessed Villa hallucinating about dead people
in the room. Villa told one of the officers to draw her weapon and shoot the other officer. Villa also
told the officers that there was a dead person in the apartment behind the house. After Villa was
placed in an ambulance, he asked how the woman was. The only injury Villa sustained was an injury
through the webbing of his hand. The EMS technician stated that the amount of blood covering
Villa could not have resulted from his cut.

 While investigating Villa's statement about the dead person in the apartment behind the
house, the officers discovered Dotson's body in Ytuarte's apartment. Dotson had sustained fourteen
incised wounds and five stab wounds. The officers kicked the locked door open and observed that
a back window had been broken outward. A broken knife blade was found close to Dotson's body. 
A broken knife handle and broken glass were found close to the window. A trail of blood led from
Ytuarte's apartment to the apartment Villa had broken into. A black purse was located close to
Dotson's body containing her driver's license and various pieces of paper with phone numbers,
including a note stating, "Lupe, 921-1440, works from 6 a.m. through 6 p.m., Wednesday nights
pool." Lupe Gomez's aunt testified that the phone number belonged to her and that was her number
when Gomez would visit her home. (1)

 Dr. David R. Senn, a forensic odontologist, testified that Dotson had five visible bite marks
on her left arm. Based on a profile he created with impressions of Villa's teeth, Dr. Senn opined
with reasonable medical certainty that Villa made bite marks number three and four. Bite marks one
and five were insufficient to make a comparison, and Villa could not be excluded as making bite
mark number two.

 In addition, DNA evidence revealed that Dotson and Villa could not be excluded as the
contributors of the DNA from: (1) the broken knife handle with Villa as the major contributor; (2)
the broken-off knife blade with Dotson as the major contributor; (3) one broken glass fragment with
Villa as the major contributor; and (4) cuttings from Villa's shorts. In addition, Villa was not
excluded as the contributor of the DNA from: (1) another broken glass fragment; (2) a paper towel
found in his shorts; and (3) Dotson's fingernail clippings. Although DNA testing on one of the bite
marks revealed a second male profile in addition to Villa, the testimony established that the second
profile could have been the result of DNA transferred to the bite mark from the law enforcement
personnel on the scene.

 Villa testified that after he took the drug Dotson offered him, his eyes started burning. As
he was walking through the bedroom, he was attacked by an individual that he identified as Lupe
Gomez. After fighting with Gomez and being struck with a knife, he jumped out of the window and
ran to the other apartment for protection.

Discussion


 Villa contends on appeal that the trial court violated his due process right to introduce
additional evidence to establish that Gomez committed the murder, including evidence that: (1)
Gomez was on parole at the time of the offense and was not wearing an ankle monitor; (2) Gomez
was on parole for a 1995 murder in which he stabbed a victim over 40 times with a knife, including
a lethal stab wound to the jugular vein in the victim's neck; and (3) Gomez had been indicted for a
2006 burglary offense involving a knife.

 Erroneous evidentiary rulings rarely rise to the level of denying the fundamental
constitutional rights to present a meaningful defense. Wiley v. State, 74 S.W.3d 399, 405 (Tex.
Crim. App. 2002). The two distinct scenarios in which rulings excluding evidence might rise to the
level of a constitutional violation are: (1) a state evidentiary rule which categorically and arbitrarily
prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his
defense; (2) and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable
evidence which forms such a vital portion of the case that exclusion effectively precludes the
defendant from presenting a defense. Id. In this second scenario, the rule itself is appropriate, but
the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it
effectively prevents the defendant from presenting his defensive theory. Id.

 In Wiley, the Texas Court of Criminal Appeals discussed whether the trial court's application
of Rule 403 rose to the level of denying the appellant's fundamental constitutional right to present
a meaningful defense. 74 S.W.3d at 405-06. Under Rule 403 of the Texas Rules of Evidence, a trial
court may exclude relevant evidence if its probative value is substantially outweighed by the danger
of unfair prejudice or confusion of the issues. Tex. R. Evid. 403. The Wiley court noted that in
weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special
problems presented by "alternative perpetrator" evidence. 74 S.W.3d at 406. "Although a defendant
obviously has a right to attempt to establish his innocence by showing that someone else committed
the crime, he must still show that his proffered evidence regarding the alleged alternative perpetrator
is sufficient, on its own or in combination with other evidence in the record, to show a nexus
between the crime charged and the alleged 'alternative perpetrator.'" Id. "Although it is unclear
exactly how much evidence is necessary to sufficiently prove a nexus between the offense and
allegedly guilty third party, Texas jurisprudence is clear that evidence of third party guilt is
inadmissible if it is mere speculation that another person may have committed the offense." Id.

 In this case, Villa sought to establish the necessary nexus with his testimony that Gomez
attacked him and evidence that Dotson was in possession of the phone number of Gomez's aunt. 
Although Villa's testimony that Gomez attacked him is some evidence linking Gomez to the offense,
the remaining evidence that Villa sought to have introduced to support his defensive theory was
marginally relevant. Basically, Villa sought to introduce evidence that Gomez had committed a
similar crime in 1995 for which he was on parole and had also been indicted for a burglary offense
in which he used a knife in 2006. This evidence does not tend to connect Gomez to the murder of
Dotson, and therefore it does not demonstrate the required nexus. See Dickson v. State, No. 14-06-00612-CR, 2007 WL 4442041, at *5 (Tex. App.--Houston [14th Dist.] Dec. 20, 2007, no pet. h.). (3) 
 Even if we assume the evidence had some marginal relevance, the trial court did not abuse
its discretion in excluding the evidence under Rule 403. The probative value of the testimony was
slight and presented "a great threat of 'confusion of the issues' because it would have forced the
State to attempt to disprove the nebulous allegation that perhaps [Gomez] committed the murder." 
See Wiley, 74 S.W.3d at 407. Accordingly, the trial court did not abuse its discretion in excluding
the evidence under Rule 403.

Conclusion


 The trial court's judgment is affirmed.

 Alma L. López, Chief Justice

DO NOT PUBLISH



1. Villa later testifies that Lupe Gomez attacked him at the apartment. 
2. This is the scenario discussed by the United States Supreme Court in Holmes v. South Carolina, 547 U.S. 319,
329-30 (2006).
3. The evidence Villa sought to introduce is similar to the evidence the appellant asserted was erroneously
excluded in Dickson. In Dickson, the appellant "attempted to show a nexus between Gamble [an alternative perpetrator]
and the offense-at-issue in his bill of exception by demonstrating a chronology of Gamble's offenses, similar modus
operandi between Gamble's offenses and the offense-at-issue, Gamble's access to the location of the offense-at-issue,
and the similarity of the appearance between himself and Gamble." 2007 WL 4442041, at *4. The court agreed that
Gamble's indictments and convictions indicated that he engaged in a spree of robberies overlapping the offense-at-issue. 
Id. at *5. The court held, however, that the evidence did not tend to connect Gamble to the offense-at-issue and did not
demonstrate the required nexus. Id.