**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 14-3493

---

UNITED STATES OF AMERICA

v.

FABIO MORENO VARGAS,
a/k/a FABIO MORENO

Fabio Moreno,
Appellant

---

No. 14-3513

---

UNITED STATES OF AMERICA

v.

LINDA YARLEQUE,
Appellant

---

Appeal from the United States District Court
for the District of New Jersey
(No. 2-13-cr-00096-001/002)
District Judge: Honorable William H. Walls

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2015

---

Before: CHAGARES, RENDELL, and BARRY, Circuit Judges.

(Filed: November 18, 2015)

OPINION[*]

CHAGARES, Circuit Judge.

Linda Yarleque and Fabio Moreno Vargas were convicted of (1) conspiracy to commit wire fraud and (2) bank fraud. They appeal the District Court's orders denying their motions for judgment of acquittal and for a new trial. We will affirm.

I.

We write solely for the parties' benefit and recite only the facts essential to our disposition. A jury convicted Yarleque, an administrative assistant, and her husband Moreno, a part-time chauffer, of participation in a multi-property mortgage fraud scheme. The defendants were assisted by David Martin, a mortgage broker, in preparing fraudulent loan applications from 2003 to 2006. With Martin's help, the defendants repeatedly falsified employment information, inflated income, concealed debt, and lied about their primary residence, in order to obtain mortgage loans. For example, the defendants established a virtual telephone number for a company called My Limousine Service (where Moreno claimed on the mortgage applications to work) that forwarded to Yarleque's cell phone so she could verify his employment. Moreno did not, however, report income from My Limousine Service on his tax returns filed from 2003 to 2006 — nor did he indicate on the mortgage applications that he was self-employed.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In total, the defendants submitted between them ten fraudulent loan applications to purchase a property, refinance an existing mortgage, or obtain a home equity line of credit. The loans pertained to five different properties, and allowed the defendants to profit over $260,000 through refinancing. Given this success, Yarleque also suggested the mortgage fraud scheme to her friend, Fatima Muller, who then copied the model with her husband.

After the verdict, the District Court denied the defendants' motion for judgment of acquittal. The defendants argued that they merely signed the mortgage applications prepared by Martin, and were not aware of the misrepresentations contained within. And, according to the defendants, the complexity of mortgage applications made it difficult for them to review the documents thoroughly. The District Court recounted the significant evidence against the defendants, including that Yarleque and Moreno personally signed and initialed a combined ten fraudulent applications, in many instances initialing next to the false statements. Moreover, the calls to verify Moreno's falsified employment were routed to Yarleque's cell phone. The District Court concluded that a rational juror could have found beyond a reasonable doubt that the defendants knowingly made the charged misrepresentations.

The District Court also denied the defendants' motion for a new trial. The defendants argued that the District Court erred by preventing them from cross-examining witnesses from the lenders about whether the lenders were "corrupt, reckless, negligent, or even sloppy" in approving loans sought by the defendants. Appendix ("App.") 8. The defendants claimed that this cross-examination would have allowed them to impeach

Martin's credibility and to advance the defense that the lenders encouraged Martin to prepare the false documents without the defendants' knowledge. The District Court concluded that the defendants' Fifth and Sixth Amendment rights were not violated. The defendants were allowed to question the lenders' witnesses about underwriting standards, red flags in the defendants' applications, collusion between lenders and Martin, and Martin's familiarity with the underwriting process. The defendants were also permitted to argue to the jury that lender negligence allowed Martin to falsify loan applications without the defendants' knowledge. Thus, the defendants were able to develop their theory, and the District Court simply employed its "wide latitude" to impose "reasonable limits" on cross examination that was "repetitive, cumulative, irrelevant, prejudicial, or aimed at jury nullification." App. 12. The defendants timely appealed.

## II.[1]

The defendants were convicted of conspiracy to commit wire fraud and bank fraud. Conspiracy to commit wire fraud is prohibited by 18 U.S.C. § 1349, which provides that "[a]ny person who . . . conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense." Wire fraud, 18 U.S.C. § 1343, is an offense under the relevant chapter, and requires the Government to establish beyond a reasonable doubt "(1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of . . . wire transmissions in furtherance of the scheme." Nat'l Sec.

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

Sys., Inc. v. Iola, 700 F.3d 65, 105 (3d Cir. 2012). To prove bank fraud, the evidence must establish beyond a reasonable doubt that a defendant "knowingly execut[ed], or attempt[ed] to execute, a scheme or artifice — (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.

A.

The defendants challenge the District Court's order denying their motion for judgment of acquittal. A jury verdict must be upheld if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The defendants mistakenly rely on United States v. Phillips, 731 F.3d 649 (7th Cir. 2013), to argue that there was insufficient evidence proving that they made knowing misrepresentations — as opposed to blindly signing the applications Martin prepared. In Phillips, the Court of Appeals for the Seventh Circuit reversed a district court's ruling that prevented the defendants — a couple — from testifying that they relied on a mortgage broker's instructions when completing a misleading loan application. Id. at 653, 656. That decision, however, has nothing to do with the sufficiency of the evidence question before us. Nor did the defendant couple in Phillips sign ten mortgage applications, as Yarleque and Moreno did (cumulatively). Yarleque and Moreno not only initialed next to the misstatements, but Moreno also listed Yarleque's cell phone number

as the contact for Moreno's imaginary employer. Yarleque recommended their scheme to a friend. A rational juror could have found the defendants guilty beyond a reasonable doubt as to both counts.

B.

The defendants also challenge the District Court's order denying their motion for a new trial. The decision to grant or deny a new trial is left to the discretion of the district court. United States v. Quiles, 618 F.3d 383, 390 (3d Cir. 2010). Underlying legal questions are reviewed de novo. Id.

The defendants argue that the District Court's limitations on their cross-examination of witnesses for the lenders violated the defendants' constitutional rights to a complete defense, Holmes v. South Carolina, 547 U.S. 319, 324 (2006), and to an opportunity for effective cross-examination, Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). The defendants sought cross-examination on topics to further their theory that the lenders' "recklessness, negligence, and sloppiness in reviewing and granting loans was known to David Martin, thereby emboldening him to perpetuate the fraud upon the defendants." Defs. Br. 38.[2] The defendants complain specifically about the District Court's preclusion of cross-examination about banks selling loans into the secondary market and about procedures at banks designed to catch multiple loans to one applicant.

This asserted lender recklessness, and any effect it might have had on Martin, has no bearing on the defendants' awareness of misrepresentations on the loan applications. That is, whether the lenders were reckless in approving loans simply does not make the

[2] The defendants submitted separate but identical briefs on appeal.

defendants' knowledge any more or less probable. Given this lack of relevance, limitations the District Court imposed on the topic of lender behavior were not an abuse of discretion. And, in any event, the District Court was within its "wide latitude" to "impose reasonable limits" on "marginally relevant" cross-examination. Van Arsdall, 475 U.S. at 679.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.