# SUPREME COURT OF THE UNITED STATES

RODNEY REED *v.* BRYAN GOERTZ, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF BASTROP COUNTY, TEXAS

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 24–1268.   Decided March 23, 2026

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting from the denial of certiorari.

"DNA testing has an unparalleled ability to both exonerate the wrongly convicted and to identify the guilty." *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U. S. 52, 55 (2009).  For the last 11 years, death-row prisoner Rodney Reed has sought DNA testing of key evidence that could prove his innocence.  Because the Fifth Circuit did not address a potentially meritorious argument that Reed raised in support of his claim, the Court should summarily vacate the decision below and remand for further consideration of Reed's claim.

In 1998, Reed was convicted and sentenced to death for the murder of Stacey Lee Stites.  Over the last two decades, Reed has maintained his innocence and proffered evidence suggesting that Stites's fiancé, a Bastrop County police officer named Jimmy Fennell, murdered Stites because Stites and Reed were having an affair.  For instance, Reed has provided sworn affidavits attesting that Fennell told a colleague one month before the murder that Stites was "'f***ing a n***r'" and that Fennell, while imprisoned in 2019 for an unrelated sexual-assault conviction, had confessed to a fellow inmate that he "'had to kill [his] n***r-loving fiancé[e].'"  *Reed* v. *Texas*, 589 U. S. 1239, 1240–1241

(2020) (SOTOMAYOR, J., statement respecting denial of certiorari) (summarizing Reed's evidence).

Key to Reed's efforts to prove his innocence have been his requests for DNA testing of multiple pieces of evidence including, as relevant here, the murder weapon: Stites's webbed belt. A significant amount of the killer's DNA is likely to be on the belt because the killer, in an act of "'great force,'" used the belt to strangle Stites for "approximately three to four minutes." *Ex parte Reed*, 271 S. W. 3d 698, 705–706 (Tex. Crim. App. 2008). If that DNA is either solely Reed's or solely Fennell's, that finding could finally resolve the "pall of uncertainty over Reed's conviction." *Reed*, 589 U. S., at 1244 (statement of SOTOMAYOR, J.).

In 2014, Reed asked the Bastrop County District Attorney to consent to the DNA testing of the belt, among other items. (Reed's counsel also offered to pay for the testing.) The district attorney denied the request in relevant part. Reed then filed a motion in state court under Article 64, Texas's postconviction DNA-testing statute. To order testing under Article 64, a court must find, among other requirements, "a chain of custody sufficient to establish that" any evidence to be tested "has not been substituted, tampered with, replaced, or altered in any material respect." Tex. Crim. Proc. Code Ann., Art. 64.03(a)(1)(A)(ii) (West 2018). The trial court denied Reed's motion, and the Court of Criminal Appeals (CCA) affirmed. The CCA upheld the trial court's findings that the belt was "contaminated" after being "handled by ungloved attorneys, court personnel, and possibly the jurors," App. to Pet. for Cert. 65a–68a, and that this contamination violated Article 64's chain-of-custody requirement.

Reed then sued in federal court under 42 U. S. C. §1983. He argued that Article 64, as authoritatively construed by the CCA, violated the Fourteenth Amendment Due Process Clause facially and as-applied to him because it is "fundamentally inadequate to vindicate" a defendant's state-

created liberty interest in proving his innocence with new evidence. *Osborne*, 557 U. S., at 69. Reed contended that the CCA's noncontamination requirement does not "compor[t] with fundamental fairness," *ibid.* (internal quotation marks omitted), because it places "arbitrary limitation[s] on . . . potential 'exculpatory results'" despite the fact that DNA testing can still produce probative results even when there is "contamination," App. to Pet. for Cert. 111a. The District Court dismissed Reed's complaint. The Fifth Circuit initially affirmed on the ground that Reed's §1983 suit was untimely, but this Court reversed. See *Reed* v. *Goertz*, 598 U. S. 230, 237 (2023).

On remand, the Fifth Circuit ordered supplemental briefing on the merits of Reed's due process claim. In his supplemental brief, Reed made three related, yet independent, arguments as to why the noncontamination requirement violates due process.

First, Reed argued that the noncontamination requirement is arbitrary because "DNA testing can yield highly probative information even where crime-scene evidence was supposedly contaminated." Plaintiff-Appellant Supp. Brief in No. 19–70022 (CA5), p. 21 (Reed CA5 Supp. Brief ). Relying on *amicus* brief by Chase Baumgartner, a former lead forensic scientist at the Texas Department of Public Safety, Reed claimed that laboratories, including in the Texas Department of Public Safety, have protocols for detecting and accounting for contamination that can ensure reliable results. See *id.*, at 21–23 (citing Brief for Chase Baumgartner as *Amicus Curiae* in *Reed* v. *Goertz*, O. T. 2022, No. 21–442 (Baumgartner Brief )); Recording of Oral Arg. in No. 19–70022 (CA5, Sept. 23, 2024), at 8:59–10:05. Baumgartner stated that "[e]ven in th[e] worst-case scenario of developing the most complex, contaminated DNA profile that can still be interpreted," Texas Department of Public Safety analysts "could accurately include or exclude [Reed] or Mr. Fennell with above 95% accuracy."

Baumgartner Brief 18. Yet, Reed maintains, Texas's non-contamination requirement "bars prisoners from accessing DNA testing, no matter its reliability or the resulting unreliability to the truth-finding process of preventing it." Reed CA5 Supp. Brief 2. In other words, the core of Reed's first argument was that the noncontamination requirement "serve[s] no legitimate purpose" or is "disproportionate to the ends" that it is "asserted to promote," *Holmes* v. *South Carolina*, 547 U. S. 319, 326 (2006), because DNA testing has developed such that the accuracy of the results is not meaningfully affected by contamination.

Second, Reed argued that it is "fundamentally unfair" to hold any alleged contamination against the prisoner because the State is "responsible for the condition of the evidence" while it is stored and handled. Reed CA5 Supp. Brief 22–23.

Third, Reed argued that the noncontamination requirement is unfair because the burden it places on prisoners in the postconviction context is more stringent than the burden on prosecutors seeking to introduce DNA-tested evidence at trial. *Id.*, at 23–24. As Reed explained, Texas courts routinely admit DNA test results from "contaminated" evidence when offered by the State seeking to secure a conviction. *Ibid.*

The Fifth Circuit concluded that the noncontamination requirement does not violate due process, but its opinion appears to have addressed only the second and third arguments made by Reed. As to the second argument, the Fifth Circuit reasoned that "it seems both inevitable and necessary that the state be tasked with storing evidence" and that "entrusting this responsibility to the government is [not] fundamentally unfair on its face." 136 F. 4th 535, 545 (2025). The Fifth Circuit then rejected Reed's third argument by explaining that it is fair to require a higher standard for postconviction prisoners because "there is no re-

quirement that postconviction relief procedures be held to the same standards as procedures at trial." *Id.*, at 546.

Yet, the Fifth Circuit did not squarely confront the argument that the noncontamination requirement itself serves no legitimate purpose because DNA testing is now capable of generating accurate results even when the evidence has been contaminated. If Reed is right that DNA testing the belt is highly likely to yield an accurate result despite contamination, the CCA's reliance on the noncontamination requirement to block Reed from testing it might well "violate due process principles" by "arbitrar[ily]" denying Reed the opportunity to prove his innocence with new evidence. *Evitts* v. *Lucey*, 469 U. S. 387, 404 (1985); see *Wolff* v. *McDonnell*, 418 U. S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government").

To be sure, the Fifth Circuit's opinion noted that Reed stated that "'DNA testing can yield highly probative information even where crime-scene evidence was supposedly contaminated.'" 136 F. 4th, at 545 (quoting Reed CA5 Supp. Brief 21). It appears in context, however, that the panel interpreted that statement as subsidiary to Reed's argument that it is unfair to hold any contamination against the prisoner when the State controls the evidence's storage. See 136 F. 4th, at 545 (characterizing Reed's argument as asserting it was "'fundamentally unfair' . . . to foreclose testing due to deficiencies on the part of the state, especially 'because DNA testing can yield highly probative information even where crime-scene evidence was supposedly contaminated'"); see also Brief in Opposition 25 (admitting the Fifth Circuit discussed Reed's argument only "in the context of an imbalanced burden between the State at trial and a prisoner postconviction"). The panel thus never directly passed upon the question whether the CCA's application of the noncontamination requirement violated the Due Process Clause because it arbitrarily denied Reed the op-

portunity to obtain potentially reliable and exculpatory
DNA test results from the murder weapon.

*      *      *

It is inexplicable why the Bastrop County District Attor-
ney's Office refuses to allow DNA testing of the belt that
was used to kill Stites, despite the very substantial possi-
bility that such testing could exculpate Reed and identify
the real killer.  It is also inexplicable why the courts below
did not proceed with more caution and carefully consider
each of Reed's arguments, especially given that his claim
implicates the "constitutionally intolerable" possibility of
the "execution of a[n] . . . innocent person." *Herrera* v. *Col-
lins*, 506 U. S. 390, 419 (1993) (O'Connor, J., concurring).
The Court should vacate the Fifth Circuit's judgment and
remand the case for the Fifth Circuit to address Reed's ar-
gument in the first instance.  Because the Court refuses to
do so, the State will likely execute Reed without the world
ever knowing whether Reed's or Fennell's DNA is on the
murder weapon, even though a simple DNA test could re-
veal that information.  I respectfully dissent.